UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PLYMOUTH YONGLE TAPE (SHANGHAI) CO., LTD.,<br><br>      Plaintiff and Defendant-in-Counterclaim,<br><br>v.<br><br>PLYMOUTH RUBBER COMPANY, LLC, and PLYMOUTH RUBBER CO., INC.,<br><br>      Defendants,<br><br>PLYMOUTH RUBBER COMPANY, LLC,<br><br>      Plaintiff-in-Counterclaim,<br><br>v.<br><br>DELPHI AUTOMOTIVE SYSTEMS, LLC,<br><br>      Defendant-in-Counterclaim | Civil Action No. 08-11599-MLW |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
AMENDED COUNTERCLAIMS, OR, IN THE ALTERNATIVE,
TO STAY LITIGATION OF COUNTERCLAIMS
<u>PENDING ARBITRATION, AND TO COMPEL ARBITRATION</u>**

JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3795

ROSE, CHINITZ & ROSE
One Beacon Street, Fourth Floor
Boston, Massachusetts 02108

*Counsel for Plaintiff
Plymouth Yongle Tape (Shanghai) Co., Ltd.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................iii

PRELIMINARY STATEMENT.. .......................................................................................1

FACTUAL BACKGROUND… ........................................................................................1

ARGUMENT………..........................................................................................................1

I.   THE COURT MAY CONSIDER DOCUMENTS AND FACTS
EXTERNAL TO THE CLAIM ................................................................................1

    A.  The Court May Consider Documents Referenced In The Claim........................1

    B.  The Court May Consider Information Necessary To
Determine Subject Matter Jurisdiction And Identify Parties
"Indispensable" To Fair Resolution Of The Claim............................................2

    C.  The Court May Consider Information Necessary To The Arbitration Motion....2

    D.  The Court May Consider Plymouth's Admissions From The State Court Action .............3

II.  THE CLAIM MUST BE DISMISSED FOR
LACK OF SUBJECT MATTER JURISDICTION ..................................................4

    A.  The Claim Is Permissive And Lacks An Independent Jurisdictional Basis........................4

    B.  Complete Diversity Between The Parties Is Lacking ........................................6

III. THE CLAIM MUST BE DISMISSED FOR
FAILURE TO JOIN INDISPENSABLE PARTIES ................................................6

    A.  The Claim Fails To Join "Necessary" Parties...................................................7

    B.  The Absent Parties Are "Indispensable" To Fair Resolution Of The Claim .....................9

        1.  Judgment On The Claim Would Be Prejudicial to Absent Parties ........................10

        2.  No Protective Measures Are Available To Eliminate Prejudice ..........................12

        3.  Judgment In The Absence Of Parties Not Joined Would Be Inadequate .............12

        4.  Plymouth Has An Adequate Remedy In Another Forum ......................................13

    C.  Joinder Of The Indispensable Parties Is Not Feasible .......................................14

      1.    Joinder Would Defeat Diversity Jurisdiction.............................................................14

      2.    Plymouth Cannot Establish Personal Jurisdiction Over Absent Parties ................14

      3.    Joinder Would Violate The FAA ...........................................................................16

IV.  THE CLAIM MUST BE STAYED, IN FAVOR OF ARBITRATION ...................................17

V.   THE CLAIM FAILS ON THE MERITS.................................................................................18

    A.  The Agreements Allow Yongle To Use Proprietary Technology ......................................18

    B.  Plymouth Failed In Its Marketing Duties..........................................................................19

CONCLUSION.......................................................................................................................................20

NYI-4136704v7

# TABLE OF AUTHORITIES

## CASES

Acton Co. of Mass. v. Bachman Foods, Inc.,
  668 F.2d 76 (1st Cir. 1982)................................................................................................6, 11

AgGrow Oils, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,
  242 F.3d 777 (8th Cir. 2001) ....................................................................................................17

American Fiber & Finishing, Inc. v. Tyco Healthcare Group, L.P.,
  362 F.3d 136 (1st Cir. 2004)........................................................................................................6

Aub v. Technicolor Entm't Services,
  224 F. Supp. 2d 371 (D. Mass. 2002) ......................................................................................15

Aversa v. United States,
  99 F.3d 1200 (1st Cir. 1996)........................................................................................................2

B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.,
  440 F.3d 541 (1st Cir. 2006)........................................................................................................9

B. Fernandez & Hnos, Inc. v. Kellogg USA, Inc.,
  516 F.3d 18 (1st Cir. 2008).................................................................................................. passim

Baggesen v. American Skandia Life Assurance Corp.,
  235 F. Supp. 2d 30 (D. Mass. 2002) ........................................................................................18

Beane v. Beane,
  No. 06-cv-446, 2008 WL 1787105 (D.N.H. Apr. 18, 2008) ........................................8, 12, 14

Beddall v. State Street Bank & Trust Co.,
  137 F.3d 12 (1st Cir. 1998)...........................................................................................................3

Blacksmith Investments, LLC v. Cives Steel Co.,
  228 F.R.D. 66 (D. Mass. 2005)....................................................................................................8

Brandi v. Nat'l Bulk Carriers, Inc.,
  436 N.E.2d 444 (Mass. App. 1982) ..........................................................................................14

Central Tools, Inc. v. Mitutoyo Corp.,
  381 F. Supp. 2d 71 (D.R.I. 2005)...........................................................................................9, 11

Chlebda v. H.E. Fortna & Brother, Inc.,
  609 F.2d 1022 (1st Cir. 1979).....................................................................................................15

Cont'l Fed. Sav. & Loan Ass'n v. Delta Corp. of Am.,
    71 F.R.D. 697 (W.D. Okla. 1976)..............................................................5

Corion Corp. v. Chen,
    No. 91-11792-Y, 1991 WL 280288 (D. Mass. Dec. 27, 1991) ................2

Cross Timbers Oil Co. v. Rosel Energy, Inc.,
    167 F.R.D. 457 (D. Kan. 1996)..............................................................9

Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,
    184 F. Supp. 2d 55 (D. Mass. 2001) ....................................................9

Encompass Ins. Co. of Mass. v. Giampa,
    522 F. Supp. 2d 300 (D. Mass. 2007) ..................................................1

Feed Mgmt. Sys., Inc. v. Brill,
    518 F. Supp. 2d 1094 (D. Minn. 2007)..................................................6

Fluehmann v. Associates Fin. Services,
    No. CIV-A. 01-40076, 2002 WL 500564 (D. Mass. Mar. 29, 2002) ...............17, 18

Fortune Mgmt., Inc. v. Bly,
    118 F.R.D. 21 (D. Mass. 1987)..............................................................5

Frotton v. Barkan,
    219 F.R.D. 31 (D. Mass. 2003)............................................................11

Gabriel v. Preble,
    396 F.3d 10 (1st Cir. 2005)..................................................................14

Green Tree Fin. Corp. v. Holt,
    171 F.R.D. 313 (N.D. Ala. 1997)........................................................17

GMAC Mortgage Corp. v. Bayko,
    No. 04-12448, 2005 WL 677826 (D. Mass. Mar. 24, 2005) ................13

Harrell & Sumner Contracting Co. v. Peabody Petersen Co.,
    415 F. Supp. 573 (N.D. Fla. 1976)......................................................11

Hoefs v. CACV of Colo., LLC,
    365 F. Supp. 2d 69 (D. Mass. 2005) ................................................2, 18

Hoover v. Gershman Inv. Corp.,
    774 F. Supp. 60 (D. Mass. 1991) ..........................................................8

NYI-4136704v7

Hostar Marine Transp. Sys., Inc. v. United States,
    No. Civ.A. 05-10111, 2005 WL 1331221 (D. Mass. May 26, 2005) ........................3

Hutchins v. Cardiac Science, Inc.,
    456 F. Supp. 2d 173 (D. Mass. 2006) ......................................................................8

Iglesias v. Mutual Life Ins. Co. of N.Y.,
    156 F.3d 237 (1st Cir. 1998) ................................................................................4, 5

InterGen N.V. v. Grina,
    344 F.3d 134 (1st Cir. 2003) ....................................................................................3

Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers,
    Local Union No. 6 v. Thermo-Guard Corp.,
    880 F. Supp. 42 (D. Mass. 1995) .............................................................................5

Jana Brands, Inc. v. NexiFM, Inc.,
    No. 01-12320, 2003 WL 164251 (D. Mass. Jan. 23, 2003).............................14, 15

Lambergs v. Total Health Sys., Inc.,
    No. 88-0670-Z, 1989 WL 63243 (D. Mass. June 5, 1989) .......................................7

Lopez v. Shearson American Express, Inc.,
    684 F. Supp. 1144 (D.P.R. 1988)......................................................................10, 12

Maritimes & Ne. Pipeline, L.L.C. v. 16.66 Acres of Land,
    190 F.R.D. 15 (D. Me. 1999) .................................................................................14

In re Mass. Diet Drug Lit.,
    338 F. Supp. 2d 198 (D. Mass. 2004) ......................................................................4

Mastrobuono v. Shearson Lehman Hutton, Inc.,
    514 U.S. 52 (1995).................................................................................................16

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985)...............................................................................................16

Montana v. Abbot Laboratories,
    266 F. Supp. 2d 250 (D. Mass. 2003) ......................................................................4

McCaffrey v. Rex Motor Transp., Inc.,
    672 F.2d 246 (1st Cir. 1982)................................................................................5, 6

McCulloch v. Malave-Velez,
    380 F. Supp. 2d 46 (D.P.R. 2005)..........................................................................11

NYI-4136704v7

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
460 U.S. 1 (1983) ................................................................................................18

Murphy v. United States,
45 F.3d 520 (1st Cir. 1995) ....................................................................................4

Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mass. Mun. Wholesale Elec. Co.,
117 F.R.D. 321 (D. Mass. 1987) ...........................................................................12

Owens-Illinois, Inc. v. Meade,
186 F.3d 435 (4th Cir. 1999) ................................................................................17

PCS 2000 LP v. Romulus Telecomm., Inc.,
148 F.3d 32 (1st Cir. 1998)....................................................................................6

Parikh v. Franklin Med. Ctr. Inc.,
163 F.R.D. 167 (D. Mass. 1995)............................................................................8

Picciotto v.Continental Cas. Co.,
512 F.3d 9 (1st Cir. 2008)................................................................................13, 14

Pramco, LLC v. San Juan Bay Marina, Inc.,
435 F.3d 51 (1st Cir. 2006)...................................................................................14

Provident Tradesmens Bank & Trust Co. v. Patterson,
390 U.S. 102 (1968)..............................................................................................13

Pujol v. Shearson/American Express, Inc.,
877 F.2d 132 (1st Cir. 1989)..................................................................................7

Ranger Fuel Corp. v. Youghiogheny & Ohio Coal Co.,
677 F.2d 378 (4th Cir. 1982) ................................................................................17

Raytheon Co. v. Continental Cas. Co.,
123 F. Supp. 2d 22 (D. Mass. 2000) ...................................................................6-7

Rivera Rojas v. Loewen Group Int'l, Inc.,
178 F.R.D. 356 (D.P.R. 1998) ................................................................................2

Roxbury/South End Tenants' Council, Inc. v. Cornerstone Corp.,
573 F. Supp. 2d 359 (D. Mass. 2008) .................................................................1-2

Shields v. Barrow,
58 U.S. 130 (1854).................................................................................................8

NYI-4136704v7

In re Sonus Networks, Inc. Sec. Lit.,
    No. Civ.A. 04-10294, 2006 WL 1308165 (D. Mass. May 10, 2006) ........................................3

Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.,
    526 F.3d 38 (1st Cir. 2008).........................................................................................17, 18

Steel Co. v. Citizens for a Better Environment,
    523 U.S. 83 (1998).....................................................................................................................4

Stegall v. Ladner,
    394 F. Supp. 2d 358 (D. Mass. 2005) ......................................................................................3

Stefanik v. Town of Huntington,
    536 F. Supp. 2d 106 (D. Mass. 2008) ......................................................................................3

Stiegele v. Bailey,
    No. 05-10677, 2007 WL 4197496 (D. Mass. Aug. 23, 2007) ..................................................3

Tell v. Trustees of Dartmouth Coll.,
    145 F.3d 417 (1st Cir. 1998)..................................................................................8, 11, 13, 14

Ticker Center, Inc. v. Banco Popular de Puerto Rico,
    No. 04-2062, 2008 WL 859275 (D.P.R. Mar. 28, 2008) ........................................................13

Travelers Indem. Co. v. Dingwell,
    884 F.2d 629 (1st Cir. 1989)..................................................................................................8, 9

Trombino v. Transit Cas. Co.,
    110 F.R.D. 139 (D.R.I. 1986) ...................................................................................................8

Viqueira v. First Bank,
    140 F.3d 12 (1st Cir. 1998).......................................................................................................4

Watterson v. Page,
    987 F.2d 1 (1st Cir. 1993).....................................................................................................1, 3

## STATUTES, RULES AND OTHER AUTHORITIES

9 U.S.C. § 1, et seq...………...........................................................................................................2

9 U.S.C. § 2………......................................................................................................................16

9 U.S.C. § 3………......................................................................................................................18

9 U.S.C. § 4………......................................................................................................................2, 18

9 U.S.C. § 6………......................................................................................................................2

NYI-4136704v7

9 U.S.C. § 201...……............................................................................................16

Fed. R. Civ. P. 12……….......................................................................................6

Fed. R. Civ. P. 13…………....................................................................................4

Fed. R. Civ. P. 14…………....................................................................................7

Fed. R. Civ. P. 19…………........................................................................ *passim*

28 U.S.C. § 1332.………......................................................................................4, 6

M.G.L.A. 223A § 3.………......................................................................................14

P.R.C. Laws, Contracts, Art. 60..........................................................................19

Convention on the Recognition and Enforcement of Foreign Arbitral Awards ...........................16

Charles A. Wright & Arthur R. Miller,
   5A <u>Federal Practice & Procedure</u> (3rd ed. 2004).....................................................2

NYI-4136704v7

## PRELIMINARY STATEMENT

Plaintiff Plymouth Yongle Tape (Shanghai) Co., Ltd. ("Yongle") respectfully moves to dismiss the amended counterclaims (the "Claim"), dated November 25, 2008, of Defendant Plymouth Rubber Co., Inc. ("Plymouth"). Yongle filed a simple, straightforward action to recover more than $5 million on account of goods sold to Plymouth, for which Plymouth has not paid. In response, Plymouth has employed a classic "kitchen sink" strategy. Plymouth cites contracts, and names parties, that have nothing to do with Yongle's Complaint. Plymouth's Claim must be dismissed, for lack of subject matter jurisdiction, for failure to join indispensable parties, and because the Claim is legally inadequate. Alternatively, litigation of the Claim must be stayed, in favor of arbitration.

## FACTUAL BACKGROUND

Facts in support of this motion are derived from Plymouth's own Claim, documents cited in the Claim, and the record of proceedings in a State Court action that Plymouth commenced, asserting essentially the same causes of action proffered in the Claim. Relevant documents are attached to the Declaration of Steven C. Bennett ("Bennett Decl."), dated December 10, 2008, which also summarizes relevant portions of those documents.

## ARGUMENT

### I. THE COURT MAY CONSIDER DOCUMENTS AND FACTS EXTERNAL TO THE CLAIM

#### A. The Court May Consider Documents Referenced In The Claim

When ruling on a motion to dismiss, the Court may consider "documents sufficiently referred to in the counterclaim without converting the motion into one for summary judgment." Encompass Ins. Co. of Mass. v. Giampa, 522 F. Supp. 2d 300, 306 (D. Mass. 2007) (quotation omitted) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)); see also Roxbury/South End

Tenants' Council, Inc. v. Cornerstone Corp., 573 F. Supp. 2d 359, 365 n.61 (D. Mass. 2008) (court may consider documents referenced in complaint). Here, the Claim arises from alleged breaches of various contracts. This Court may properly review those contracts, referenced in the Claim, on this motion to dismiss.

      B.      The Court May Consider Information Necessary To Determine
              Subject Matter Jurisdiction And Identify Parties "Indispensable"
              To Fair Resolution Of The Claim

      The Court may consider evidence, beyond the scope of the pleadings, in determining its own subject matter jurisdiction. See Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996). On a motion to dismiss for failure to join an indispensable party, moreover, the moving party may present, and the court may consider, evidence outside the pleadings. See Rivera Rojas v. Loewen Group Int'l, Inc., 178 F.R.D. 356, 360 (D.P.R. 1998); see also Charles A. Wright & Arthur R. Miller, 5A Federal Practice & Procedure § 1359 (3rd ed. 2004).

      C.      The Court May Consider Information Necessary To The Arbitration Motion.

      Requests for relief under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., "shall be made and heard in the manner provided by law for the making and hearing of motions[.]" FAA, § 6. Only if the making of the arbitration agreement, or the "failure, neglect, or refusal to perform" the agreement is in issue must there be a hearing; and, in such case, "the court shall proceed summarily to the trial thereof." FAA, § 4; see Corion Corp. v. Chen, No. 91-11792-Y, 1991 WL 280288 at *1 n.1 (D. Mass. Dec. 27, 1991) (court may proceed by "summary hearing," without testimony, where "there is sufficient evidence on record before the Court to resolve the question" of arbitration). The party opposing arbitration must "identify a triable issue of fact," justifying a trial. Hoefs v. CACV of Colo., LLC, 365 F. Supp. 2d 69, 72 (D. Mass. 2005).

D.      The Court May Consider Plymouth's Admissions From The State Court Action

Even on a motion to dismiss, a court is not "unduly constrained" to the assertions of a pleading.  Hostar Marine Transp. Sys., Inc. v. United States, No. Civ.A. 05-10111, 2005 WL 1331221 at *1 (D. Mass. May 26, 2005).  Thus, a court, on a motion to dismiss, may consider documents "the authenticity of which are not disputed by the parties," even though such documents may not be expressly referenced in a pleading.  Watterson, 987 F.2d at 3; see In re Sonus Networks, Inc. Sec. Lit., No. Civ.A. 04-10294, 2006 WL 1308165 at *17 n.18 (D. Mass. May 10, 2006) (considering documents where "the parties do not dispute the authenticity");  Stegall v. Ladner, 394 F. Supp. 2d 358, 362 n.2 (D. Mass. 2005) (considering assertions by plaintiff even though "this information is not in the relevant pleadings").  Thus, as this Court has noted, "when 'a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document the authenticity of which is not challenged, that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss[.]'"  Stiegele v. Bailey, No. 05-10677, 2007 WL 4197496 at *1 (D. Mass. Aug. 23, 2007) (Wolf, J.) (quoting Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998)).

Here, even though Plymouth studiously avoided, in its Claim, any reference to the State Court action, the Court may take notice of those parallel public proceedings.  The Court, moreover, may take notice of the e-mail and letter communications, written by Plymouth personnel, introduced by Staffco in the State Court action, and not disputed by Plymouth.[1]

---

[1] Indeed, were that not so, the Court would indirectly countenance Plymouth playing "fast and loose" by averring certain facts in the State Court action, and different facts here.  Cf. Stefanik v. Town of Huntington, 536 F. Supp. 2d 106, 114 (D. Mass. 2008) (party "cannot have it both ways" in separate pleadings) (citing InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003)).

NYI-4136704v7

## II.  THE CLAIM MUST BE DISMISSED
##       FOR LACK OF SUBJECT MATTER JURISDICTION

Federal courts are courts of limited jurisdiction.  A court must consider the limits of its jurisdiction before addressing the merits of any claim.  See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998) (decision without jurisdiction "carries the courts beyond the bounds of authorized judicial action").  The "proponent" of federal jurisdiction "must carry the burden of demonstrating the existence of federal jurisdiction."  Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998) ("federal jurisdiction is never presumed"); see Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) ("the party invoking the jurisdiction of a federal court carries the burden of proving its existence") (quotation omitted).  The federal diversity jurisdiction statute, moreover, "should be strictly construed against federal jurisdiction[.]"  In re Mass. Diet Drug Lit., 338 F. Supp. 2d 198, 202 (D. Mass. 2004); see also Montana v. Abbot Laboratories, 266 F. Supp. 2d 250, 254 (D. Mass. 2003).

The sole basis Plymouth asserts for jurisdiction over its Claim is diversity of citizenship.  See Amended Claim, ¶ 4 (citing 28 U.S.C. § 1332).  Mere invocation of diversity jurisdiction, however, does not end the matter.  The First Circuit has confirmed that, in considering potential diversity jurisdiction over a counterclaim, "the nature of the counterclaim is crucial."  Iglesias v. Mutual Life Ins. Co. of N.Y., 156 F.3d 237, 241 (1st Cir. 1998).

### A.  The Claim Is Permissive And Lacks An Independent Jurisdictional Basis

A "compulsory" counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and does not require adding another party over whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a)(1).  "[A]ny claim that is not compulsory" must be treated as "permissive."  Fed. R. Civ. P. 13(b).

There are at least four tests to determine whether a counterclaim is compulsory or permissive:

1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
2) Would <u>res judicata</u> bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?
3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?
4) Is there any logical relation between the claim and the counterclaim?

<u>Iglesias</u>, 156 F.3d at 241 (quoting <u>McCaffrey v. Rex Motor Transp., Inc.</u>, 672 F.2d 246, 248 (1st Cir. 1982)). Under any such test, as this Court has noted, a claim and counterclaim are "not related" such as to be "compulsory" where they arise at different times, and grow out of separate obligations. <u>See Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers, Local Union No. 6 v. Thermo-Guard Corp.</u>, 880 F. Supp. 42, 45 (D. Mass. 1995) (Wolf, J.) (counterclaim permissive where it arose after main contracts expired and arose from erroneous payments, unrelated to contracts) (dismissing counterclaim for lack of jurisdiction).

If the counterclaim is "permissive," not "compulsory," the counterclaim "require[s] [its] own jurisdictional basis," and cannot be sustained merely because the court has jurisdiction over the main claim. <u>Iglesias</u>, 156 F.3d at 241; <u>McCaffrey</u>, 672 F.2d at 248 ("Permissive counterclaims . . . may not be entertained under a federal court's ancillary jurisdiction unless there is some independent jurisdictional base such as a federal question upon which federal jurisdiction may be founded."); <u>see Int'l Ass'n</u>, 880 F. Supp. at 45 (Wolf, J.) ("Permissive counterclaims are not within the federal court's ancillary jurisdiction and may only be heard if there is an independent jurisdictional basis.").

Even where claims and counterclaims arise out of the same agreement, counterclaims are permissive "[w]here the respective claims of parties are based on entirely different alleged breaches of the same contract[.]" <u>Fortune Mgmt., Inc. v. Bly</u>, 118 F.R.D. 21, 23 (D. Mass. 1987); <u>see Cont'l Fed. Sav. & Loan Ass'n v. Delta Corp. of Am.</u>, 71 F.R.D. 697, 701 (W.D. Okla. 1976) (counterclaim permissive, although it involved same contract as complaint, where "alleged

breaches involve different contract provisions and [relate] to acts of different parties during entirely different time frames"). Claims and counterclaims that arise "during different time periods and under different contracts," moreover, clearly are not compulsory. See McCaffrey, 672 F.2d at 249. "On its face," moreover, claims on a contract are not "logically related" to claims for infringement of intellectual property rights. Feed Mgmt. Sys., Inc. v. Brill, 518 F. Supp. 2d 1094, 1097-98 (D. Minn. 2007).

Here, the Claim emphasizes different contracts, different parties, and different time periods than those at issue in the Yongle Complaint. See Bennett Decl., ¶¶ 13, 14-16 (different contracts); ¶¶ 12, 17 (different parties); ¶¶ 19-24, 26-29, 31-36 (different time periods). Thus, the Claim is a permissive counterclaim.

B.      Complete Diversity Between The Parties Is Lacking

The diversity jurisdiction statute "has long been interpreted to require complete diversity;" that is, "opposing parties may not be citizens of the same state." Acton Co. of Mass. v. Bachman Foods, Inc., 668 F.2d 76, 79 (1st Cir. 1982); see American Fiber & Finishing, Inc. v. Tyco Healthcare Group, L.P., 362 F.3d 136, 139 (1st Cir. 2004). Here, both Plymouth and Delphi were organized under the laws of Delaware. See Claim, ¶¶ 1, 3. Thus, on its face, there is no complete diversity for the Claim. See 28 U.S.C. § 1332(c)(1) (corporation is citizen of "state by which it has been incorporated"); see also PCS 2000 LP v. Romulus Telecomm., Inc., 148 F.3d 32, 35 (1st Cir. 1998) ("black-letter law that jurisdiction must be apparent from the face of the plaintiffs' pleading").

III.    THE CLAIM MUST BE DISMISSED
        FOR FAILURE TO JOIN INDISPENSABLE PARTIES

Under Rule 12(b)(7), failure to join an indispensable party pursuant to Rule 19 constitutes a basis for dismissal of an action. See Raytheon Co. v. Continental Cas. Co., 123 F. Supp. 2d 22,

32 (D. Mass. 2000).  Here, the Claim names (but does not join) at least seven absent parties

whose interests will be affected by this litigation.[2]  See Bennett Decl. ¶ 12.  Because absent

parties are indispensable to fair resolution of the Plymouth Claim, and they cannot all be joined

in the litigation, the Claim must be dismissed.

A.    The Claim Fails To Join "Necessary" Parties

Under Rule 19(a)(1) of the Federal Rules, a party is "necessary" to proceedings, and

should be joined if feasible, where:

> (A) in that person's absence, the court cannot accord complete relief among
> existing parties; or (B) that person claims an interest relating to the subject of the
> action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest;
> or (ii) leave an existing party subject to a substantial risk of incurring double,
> multiple, or otherwise inconsistent obligations because of the interest.

The presence of "even one" of the Rule 19(a) elements suffices to show that an absent

party may be "necessary" to resolution of a dispute.  See Lambergs v. Total Health Sys., Inc., No.

88-0670-Z, 1989 WL 63243, at *3 (D. Mass. June 5, 1989).  Rule 19(a), moreover, does not

require proof that an absentee's interest "will" be harmed by nonjoinder; rather, it is concerned

only that nonjoinder "may" result in such harm.  See Fed. R. Civ. P. 19(a)(1)(B).

The determination of whether a party is "necessary" to resolution of a matter thus

involves "considerations of efficiency and fairness, growing out of the particular circumstances

of the case[.]"  Pujol v. Shearson/American Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989).  In

essence, "necessary" parties are those "who ought to be made parties, in order that the court may

act on that rule which requires it to decide on, and finally determine the entire controversy, and

---

[2] The initial version of the Claim did not name Delphi as a defendant.  The Amended Claim does
so, implicitly acknowledging the need to join other parties whose interests are affected by the
Claim.  Nonetheless, the joinder of Delphi without the Court's leave 25 days after the original
Claim was filed appears to be improper.  See Fed. R. Civ. P. 14(a)(1).

do complete justice, by adjusting all the rights involved" in the dispute.  Shields v. Barrow, 58 U.S. 130, 139 (1854).

In general, "all persons who have a substantial interest in the litigation must be made parties whenever necessary."[3]  Trombino v. Transit Cas. Co., 110 F.R.D. 139, 143 (D.R.I. 1986). In particular, it is well-established that a party to a contract that is the subject of litigation is a necessary party.[4]  See Hutchins v. Cardiac Science, Inc., 456 F. Supp. 2d 173, 193 (D. Mass. 2006); Blacksmith Investments, LLC v. Cives Steel Co., 228 F.R.D. 66, 74 (D. Mass. 2005). Thus, an absentee is a necessary party where "the Court's disposition of th[e] case could impair or impede [the absentee's] ability to protect his contractual interests[.]"  Parikh v. Franklin Med. Ctr. Inc., 163 F.R.D. 167, 169 (D. Mass. 1995); see Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 634 (1st Cir. 1989) (claimants under insurance policy necessary parties in dispute between insurer and insured).

Further, where the issue presented concerns the potential interests of absentee parties in property, joinder of the absentees is "necessary" to adjudication of the dispute.  See Beane v. Beane, No. 06-cv-446, 2008 WL 1787105 at *6 (D.N.H. Apr. 18, 2008) (resolution of litigation would "impair" absent party's "ability to protect its interests" in intellectual property); see also Hoover v. Gershman Inv. Corp., 774 F. Supp. 60, 64 (D. Mass. 1991) (parties should be joined

---

[3] It is not necessary, for purposes of determining whether a party has an interest in the proceedings, to show that the absent party has "a proven interest as opposed to a colorable claim."  Tell v. Trustees of Dartmouth Coll., 145 F.3d 417, 419 n.2 (1st Cir. 1998) (use of word "claims" in Rule 19 must "debar" any such inference).  Further, the absent party need not "come forward" to assert its interest.  See id. (parties with interests are "commonly not heard from at all").  Instead, the language of Rule 19(a), regarding an absent party that "claims an interest," means "nothing more" than that the absent party "appears to have such an interest."  Id. at 419 (claim of interest not defeated merely because absent party "has been silent").

[4] Indeed, even if the absent parties are not signatories to every agreement at issue in the Plymouth Claim, it is enough that they "would assuredly have to alter [their] conduct" if Plymouth's view of the agreements were sustained.  See Tell, 145 F.3d at 419.

NYI-4136704v7

when they "have a legally protected interest in the subject matter of the case without whom the court can not 'in equity and good conscience' proceed"); <u>Cross Timbers Oil Co. v. Rosel Energy, Inc.</u>, 167 F.R.D. 457, 460 (D. Kan. 1996) (where "multiple parties claim ownership interests in the same property, all potential claimants must be joined to provide complete relief and protect the interests of the absent parties"); <u>Central Tools, Inc. v. Mitutoyo Corp.</u>, 381 F. Supp. 2d 71, 77 (D.R.I. 2005) (absent party "necessary" to resolution where it retains "substantial rights" in intellectual property). Moreover, where the relief requested includes an injunction that might affect the interests of absent parties, their presence in the action is also "necessary." <u>B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.</u>, 440 F.3d 541, 548 (1st Cir. 2006) (party indispensable when injunction affected its interests under agreements).

Here, the absent parties all have interests in one or more contracts at issue in the Plymouth Claim. Further, the absent parties allegedly have "misappropriated" Plymouth's technology. And, if Plymouth obtains injunctive relief, the absent parties all might be precluded from dealing with Yongle. Thus, the absent parties are all "necessary" to fair dispute resolution.

B.      <u>The Absent Parties Are "Indispensable" To Fair Resolution Of The Claim</u>

An "indispensable" party under Rule 19(b) is "a 'necessary' party . . . who, for one reason or another, cannot be made a party *and* without whom the court determines the action cannot proceed." <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 184 F. Supp. 2d 55, 77 (D. Mass. 2001), <u>rev'd on other grounds</u>, 290 F.3d 42 (1st Cir. 2002) (emphasis in original). The essential inquiry is "whether [an absent] party is an essential part of the controversy before the court." <u>Travelers</u>, 884 F.2d at 636.

The "critical question" in determining whether a party is indispensable is whether "in equity and good conscience" the action may proceed in the absence of a necessary party. <u>B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.</u>, 516 F.3d 18, 23 (1st Cir. 2006) (affirming order

dismissing action where indispensable party could not be joined). If the court concludes that it cannot, "the action <u>must</u> be dismissed[.]" <u>Id.</u> (emphasis added). Rule 19(b) of the Federal Rules outlines four factors to guide the indispensability inquiry:

> (1) The extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

There is "no set weight" to be afforded to any of these factors, and the specified factors "do not constitute an exhaustive canvass;" thus, a court may take into account any facts relevant to the question whether to proceed "in equity and good conscience." <u>Fernandez</u>, 516 F.3d at 23 (quotation omitted). Here, all potentially relevant factors show that the absent parties are indispensable to fair resolution of the Plymouth Claim.

        1.        <u>Judgment On The Claim Would Be Prejudicial to Absent Parties</u>

A party cannot charge that a host of absent parties have joined with a named defendant to violate the plaintiff's rights, and yet fail to give the absent parties an opportunity to defend themselves against the charges. Thus, as the First Circuit has recognized, where a complaint alleges "insidious machinations" by an absent party, such that it is clear that the absent party was "a central player" in the alleged breach, the "practical course" must be to "proceed in a forum where the absentee may be joined." <u>See</u> <u>Fernandez</u>, 516 F.3d at 27 (multiple references in complaint to absent party); <u>see also</u> <u>Lopez v. Shearson American Express, Inc.</u>, 684 F. Supp. 1144, 1147 (D.P.R. 1988) (absent parties indispensable where complaint alleged "numerous instances of [their] wrongdoing").

Moreover, where judgment in one case may serve as a "persuasive precedent" in another matter involving related parties, even if the first case "may not have collateral estoppel effect," a

concern for prejudice requires dismissal for failure to join an indispensable party.  See Fernandez,
516 F.3d at 24; Acton Co., 668 F.2d at 78 (even if absent party "would not be legally bound" by
adverse ruling, such ruling "would be a persuasive precedent in a subsequent proceeding" and
would "weaken" absent party's "bargaining position for settlement purposes").  Thus, for
example, where the case may determine whether a contract is, or is not, valid, there is no form of
judgment that would "effectively settle" the controversy without doing "substantial practical
injury" to the absent party.  Fernandez, 516 F.3d at 25 (quotation omitted); see also McCulloch v.
Malave-Velez, 380 F. Supp. 2d 46, 52 (D.P.R. 2005) ("all signatories to the [agreement] must
appear as [parties] in order for the Court to provide proper relief"); see id. at 54 (signatories to
agreement are more than "mere nominal parties").

        Absent a "perfect identity of interests," moreover, a court "must be very cautious" in
accepting the suggestion that existing litigants "will serve as a proxy" for absent parties.  Tell,
145 F.3d at 419.  Thus, for example, courts have generally recognized the indispensability of
joinder of all parties to a joint venture, where the affairs of one of the venturers is at issue in the
lawsuit.  See Harrell & Sumner Contracting Co. v. Peabody Petersen Co., 415 F. Supp. 573, 575
(N.D. Fla. 1976).  Similarly, where absent parties may have an indemnity arrangement with a
named party, they should be joined in the litigation.  See Frotton v. Barkan, 219 F.R.D. 31, 32 (D.
Mass. 2003) (ADA claims against shopping center owner should have included tenant store
owners).  And, where parties in litigation may have a less "expansive" view of their property
rights, compared to the views of the absent party, the court may conclude that the absent party's
rights will "not be adequately defended" absent joinder.  Central Tools, 381 F. Supp. 2d at 79.

        Here, the absent parties would suffer prejudice if the Claim were heard without them.
The absent parties are accused of participation in a conspiracy to steal Plymouth's property.  A

judgment would necessarily determine rights in such property, and would serve as persuasive precedent on the meaning of the contracts with the absent parties. And, because Yongle does not have the same interests in those contracts and property rights, it cannot represent all the absent parties' interests.

2.      No Protective Measures Are Available To Eliminate Prejudice

Where "some form of injunctive relief may be necessary" in a proceeding, the absent party's interests may be "so extensive that it is indispensable to a proper adjudication of the case," and dismissal warranted if the absent party cannot be joined. See Fernandez, 516 F.3d at 25-26. Similarly, where the central issue in the dispute concerns ownership of property, "there is no way to structure relief" that does not determine what the present (and absent) parties own or do not own. See Beane, 2008 WL 1787105 at *7 (dismissing case for failure to join indispensable party). Where wrongdoing alleged in a claim encompasses actions by an absent party, moreover, "[a]s a practical matter, the prejudice to [the absent party] cannot be lessened or avoided." Lopez, 684 F. Supp. at 1149.

Here, Plymouth seeks injunctive relief (and, indeed, sought such relief in the parallel State Court action). Resolution of the Claim, moreover, would necessarily determine rights in contracts and intellectual property, and would address supposed wrongdoing of absent parties.

3.      Judgment In The Absence Of Parties Not Joined Would Be Inadequate

Where the central question presented in a case is whether a party has a valid, binding agreement, to which an absent party is also a signatory, the "possibility of inconsistent judgments" on that question suggests that a judgment would not be "adequate" without participation by the absent party. See Fernandez, 516 F.3d at 26; see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mass. Mun. Wholesale Elec. Co., 117 F.R.D. 321, 323 (D. Mass. 1987) (failure to join all parties to contract could make judgment of court "hollow and ineffectual");

Ticker Center, Inc. v. Banco Popular de Puerto Rico, No. 04-2062, 2008 WL 859275 at *6 (D.P.R. Mar. 28, 2008) ("Generally, a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract.") (quotation omitted).

Here, the Claim calls for resolution of rights in agreements to which the absent parties are signatories. Their participation in the proceedings thus becomes essential.

4.      Plymouth Has An Adequate Remedy In Another Forum

The question whether a judgment rendered in the absence of a central party may be "adequate" must consider (among other things), the "interest of the courts and the public in complete, consistent, and efficient settlement of controversies." Picciotto v. Continental Cas. Co., 512 F.3d 9, 18 (1st Cir. 2008) (quoting Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968)); see GMAC Mortgage Corp. v. Bayko, No. 04-12448, 2005 WL 677826 at *2 (D. Mass. Mar. 24, 2005) (case should be dismissed where adjudication in federal forum without indispensable party "is the less attractive alternative, from equity's vantage," to litigation in alternate forum). Where there is "no impediment, not of [the plaintiff's] own making," preventing it from proceeding in another jurisdiction where it may obtain relief against all affected parties, the Rule 19(b) factor is satisfied. See Fernandez, 516 F.3d at 26. Further, where the claimant has already "availed" itself of an alternate forum, the court may properly conclude that the claimant itself believes that it has an adequate remedy in another venue. See Tell, 145 F.3d at 419.

Here, the fact that there is a "striking similarity" between the claims alleged in this action and the claims alleged in the Plymouth State Court suit against Staffco, demonstrates that Plymouth itself believes that proceeding in another forum may be appropriate. See Picciotto, 512 F.3d at 19. At very least, it appears that Plymouth's decision to fracture proceedings, in

-13-

state and in federal court, demonstrates that non-joinder "is a result of [its] own litigation strategy and not a sufficient reason" for it to proceed here.[5] See id.

### C. Joinder Of The Indispensable Parties Is Not Feasible

#### 1. Joinder Could Defeat Diversity Jurisdiction

As discussed in Point II above, diversity jurisdiction already fails between the existing parties to the Claim. In addition, joinder of other indispensable parties would affect the diversity jurisdiction of the Court over Plymouth's Claim. A party cannot be joined to an action where such joinder would defeat complete diversity of citizenship, and thus "destroy subject matter jurisdiction." Fernandez, 516 F.3d at 27 n.6; see id. at 22 (intervention of non-diverse absent party "not feasible"); see also Picciotto, 512 F.3d at 17 (same); Gabriel v. Preble, 396 F.3d 10, 16 (1st Cir. 2005) (same); Tell, 145 F.3d at 419-20 (same); Beane, 2008 WL 1787105 at *7 (same). Plymouth names numerous third parties with citizenship that may well be the same as the citizenship of Plymouth's shareholders.[6]

#### 2. Plymouth Cannot Establish Personal Jurisdiction Over Absent Parties

Plymouth cannot simply assume that third parties are subject to the personal jurisdiction of the court. See M.G.L.A. 223A § 3; Jana Brands, Inc. v. NexiFM, Inc., No. 01-12320, 2003 WL 164251, at *1 (D. Mass. Jan. 23, 2003) (personal jurisdiction is restricted by Massachusetts' long arm statute and due process requirements). Instead, Plymouth must establish a basis for asserting personal jurisdiction over the absent parties. Brandi v. Nat'l Bulk Carriers, Inc., 436 N.E.2d 444, 445 (Mass. App. 1982) ("plaintiffs had the burden of establishing the facts on which

---

[5] Thus, even if the dismissal might mean that the Plymouth Claim could only be heard in "multiple" state courts or other arbitration fora, Plymouth has sufficient remedy for indispensability purposes. See Maritimes & Ne. Pipeline, L.L.C. v. 16.66 Acres of Land, 190 F.R.D. 15, 20 (D. Me. 1999).

[6] LLCs are citizens of states where their members reside. Pramco LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 54 (1st Cir. 2006). Plymouth fails to list the citizenship of its members, or of other LLCs (including Staffco).

they predicated jurisdiction over the defendant"); Jana Brands, 2003 WL 164251, at *1 (plaintiff has burden to show jurisdiction and "must go beyond the pleadings and make affirmative proof") (quoting Chlebda v. H.E. Fortna & Brother, Inc., 609 F.2d 1022, 1024 (1st Cir. 1979)).

Here, several of the indispensable parties have no connection to this forum, and thus cannot properly be subject to personal jurisdiction:

- Awesome Profits, a British Virgin Islands company with its principal offices in Hong Kong, formed Yongle (a Chinese company) along with Plymouth. See Equity Inv. and Transfer Agmt. (Bennett Decl. Ex. 12). The formation of that foreign entity does not constitute "doing business" in Massachusetts.

- CHT, a Chinese company, and parent of Awesome Profits, is alleged only to have improperly listed its assets on Yongle's books, Claim ¶ 11; see id., ¶ 21(c) (improper "negative pledge" of assets to "secure financing for CHT"). This interaction between two Chinese companies does not establish any relationship with Massachusetts.

- Wong Fung, chair of CHT, is alleged to have improperly directed CHT to list CHT assets on Yongle's books, Claim, ¶ 11. Again, this involves no contact with the State.

- Huaxia, a Chinese company and co-operator of Yongle with Plymouth, see Sales and Dist. Agmt. (Bennett Decl. Ex. 15), similarly took no steps directed at doing business in Massachusetts.

Further, even though Delphi, Lear and Condumex are all alleged in Plymouth's Claim to be customers of Plymouth, the receipt of products by these companies, in their own states of operation, does not establish contacts with the State of Massachusetts. Aub v. Technicolor Entm't Services, 224 F. Supp. 2d 371, 373-74 (D. Mass. 2002) (long arm statute "should not be

interpreted to confer jurisdiction over all purchasers of Massachusetts products and services;" such interpretation could "discourage" foreign purchasers from approaching resident sellers).

3.     Joinder Would Violate The FAA

The fundamental policy of the FAA is that a written agreement for arbitration "shall be valid, irrevocable, and enforceable[.]"  FAA, § 2.  Further, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") applies in U.S. court proceedings.  See FAA, § 201 (Convention "shall be enforced").  The Convention requires signatories to "recognize an agreement in writing under which the parties undertake to submit to arbitrate" any dispute.  Convention, Art. II(1).  Together, the FAA and the Convention declare a national policy to "ensure the enforceability, according to their terms, of private agreements to arbitrate."  Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995) (quotation omitted); see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985) (noting "strong belief in the efficacy of arbitral procedures for the resolution of international commercial disputes").

Here, several of the agreements between the indispensable parties and Plymouth call for arbitration.  The Equity Investment Agreement (between Awesome Profits and Plymouth), the Technology Transfer Agreement (between Plymouth, Yongle and Awesome Profits), and the Sales Agreement (between Plymouth, Huaxia, Yongle and Awesome Profits) all require arbitration in Hong Kong.  See Bennett Decl., ¶¶ 23, 26, 31.  The Sales Representative Agreement between Plymouth and Staffco requires ICC arbitration, which is currently pending.

Thus, if Awesome Profits, Huaxia and Staffco were joined in the Claim, the Court would have to consider the appropriateness of granting a stay in the proceedings, for purposes of

conducting one or more arbitration proceedings.[7]  Plymouth cannot defeat the arbitration rights

of these absent parties, merely by deliberately choosing not to name them as parties to the Claim,

even though their interests are at stake.  See AgGrow Oils, LLC v. Nat'l Union Fire Ins. Co. of

Pittsburgh, PA, 242 F.3d 777, 783 (8th Cir. 2001) (party would "succeed in avoiding its duty to

arbitrate" if suit related to arbitration was given priority over arbitration); see also Owens-Illinois,

Inc. v. Meade, 186 F.3d 435, 441 (4th Cir. 1999) (parties to arbitration agreement indispensable

to adjudication on applicability of arbitration provision, to avoid "legal 'whip-saw'" effect);

Ranger Fuel Corp. v. Youghiogheny & Ohio Coal Co., 677 F.2d 378, 381 (4th Cir. 1982)

(potential "proliferation of litigation" over enforcement of arbitration agreement makes absent

party indispensable); Green Tree Fin. Corp. v. Holt, 171 F.R.D. 313, 319 (N.D. Ala. 1997)

(ordering dismissal where acceptance of jurisdiction over limited group of parties would entail

"piecemeal" interpretation of arbitration clause).

## IV.   THE CLAIM MUST BE STAYED, IN FAVOR OF ARBITRATION

In the alternative, if the Court does not dismiss the Claim for lack of subject matter

jurisdiction and failure to join indispensable parties, Yongle must invoke its rights to arbitration.

The Equity Agreement,[8] the Technology Transfer Agreement and the Sales Agreement all

require arbitration of any disputes between the parties, in Hong Kong.  See Bennett Decl., ¶¶ 23,

26, 31 (summarizing agreements).  Under the FAA, where such agreements appear, a court must

---

[7] Indeed, even if the indispensable parties are not considered, Yongle has its own rights to pursue
arbitration, and stay litigation of the Claim.  See Point IV, infra.

[8] Although Yongle is not a direct party to the Equity Agreement, Yongle came into existence as a
result of that agreement, and may properly claim the benefits of the arbitration provision of that
agreement.  See Fluehmann v. Associates Fin. Services, No. CIV-A. 01-40076, 2002 WL 500564
at *7 (D. Mass. Mar. 29, 2002) (non-signatory may invoke arbitration agreement where it was an
"integral participant" in events subject to arbitration).  Further, Plymouth is estopped from
denying arbitration of disputes arising out of the very agreements it seeks to enforce.  See id.; see
also Sourcing Unlimited, Inc. v. Asimco Int'l, Inc., 526 F.3d 38, 47 (1st Cir. 2008) (courts may
estop signatory from denying arbitration with related non-signatory).

NYI-4136704v7

stay litigation and direct the parties to arbitration.[9]  See FAA, §§ 3 (authority to stay litigation), 4

(authority to direct parties to "proceed with the arbitration" in accordance with agreement).

Thus, the court must "promptly compel" arbitration once it is "satisfied that the parties agreed to

arbitrate."  Hoefs, 365 F. Supp. 2d at 72; see Baggesen, 235 F. Supp. 2d at 32-33 (noting "strong

policy in favor of compelling arbitration where the parties have agreed to do so").

## V.    THE CLAIM FAILS ON THE MERITS

Even if the Claim is not dismissed or stayed on procedural grounds, it fails on the merits,

on its face.

### A.    The Agreements Allow Yongle To Use Proprietary Technology

The Plymouth Claim is based largely on the terms of the Equity Agreement, the

Technology Transfer Agreement and the Sales Agreement.[10]  Plymouth alleges:

> Yongle has completely abrogated and disregarded the comprehensive business
> deal and its obligations under the Equity Agreement, Sales and Distribution
> Agreement, and Technology Transfer Agreement, and therefore, Yongle can no
> longer use the Proprietary Information to manufacturer [sic] the Proprietary Line
> or sell the Proprietary Product Line.

See Claim, ¶ 34.  Yet, Plymouth also insists that all these agreements "were in full force and

effect and that Plymouth expected that they would be honored."  Claim, ¶ 29.

So long as the agreements are in force, as Plymouth claims, Yongle "shall have the right

to use the technology[.]"  Equity Agmt., Ch. 2, Art. 6; see Tech. Tr. Agmt., Art. 2, §§  2.1-2.3

---

[9] Delphi may choose to join the Hong Kong arbitration, invoking estoppel to compel Plymouth to
arbitrate with a non-signatory.  See Fluehmann, supra; Sourcing Unlimited, supra.  Alternatively,
the Court is empowered to stay litigation of the Plymouth claim against Delphi, pending
arbitration.  See Baggesen v. American Skandia Life Assurance Corp., 235 F. Supp. 2d 30, 33
(D. Mass. 2002) (decision on litigation stay left to "discretion" of court in how best to "control
its docket") (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 n.23
(1983)).
[10] These agreements are all governed by Chinese law.  Excerpts from relevant code sections of
Chinese contracts law are attached to the Bennett Declaration as Exhibits 16 and 17.

(Plymouth to transfer technology to Yongle and, after transfer, technology "shall be considered jointly owned by Plymouth and the Company [Yongle]"); Sales Agmt., § 2.2 (parties each have "right to use each other's Technology").

Thus, Plymouth has no right to preclude Yongle from using whatever technology it claims to have transferred. Indeed, if Yongle uses such technology, and makes money, then Plymouth's equity interest in Yongle will appreciate in value.

B.     Plymouth Failed In Its Marketing Duties

Plymouth apparently disputes whether it owes Yongle anything for the goods shipped pursuant to the Consignment Agreement at issue in Yongle's Complaint in this action. What Plymouth does not dispute (and cannot dispute) is that its own admissions show a material breach of its marketing duties under the separate contracts on which it relies in its Claim.[11] Under the Equity Agreement, Plymouth was obligated to "assist [Yongle] without compensation [other than equity in Yongle] to market and sell its products[.]" Equity Agmt., Ch. 3, Art. 9; see also id., Ch. 8, Art. 23(ii)(b) (responsibilities of Plymouth include "assist[ing] the Company [Yongle] in marketing its products"). This, according to Plymouth, was part of the "comprehensive business deal" with Yongle and the signatories to the various agreements. See Claim, ¶ 34.

Undisputed admissions from Plymouth, however, show that Plymouth destroyed its relationship with Delphi, Plymouth's "largest customer" in North America. Beginning in late 2007, Plymouth informed Delphi that it required "pricing adjustments" (increases), that it was "losing money" on sales to Delphi, and that it required the "unpleasant necessity of this price increase." See Bennett Decl., ¶¶ 33-35 (summarizing Plymouth admissions). Thereafter,

---

[11] Chinese contract law commands full performance of Plymouth's obligations. P.R.C. Laws, Contracts, Art. 60. ("Each party [to a contract] shall fully perform its own obligations as agreed upon.")

culminating in August 2008, Delphi announced that it would "exit 100%" of its business with Plymouth, and Plymouth confirmed that it was "transitioning our supply relationship with Delphi." Bennett Decl., ¶¶ 36-37. This abandonment of Plymouth's relationship with its best customer constitutes a material breach of the "business deal" by Plymouth, and renders Plymouth's Claim for breach of the deal by Yongle entirely invalid.

## CONCLUSION

For the foregoing reasons, the Claim should be dismissed. In the alternative, litigation of the claim should be stayed pending arbitration.

Dated: December 10, 2008

Respectfully submitted,
PLAINTIFF, PLYMOUTH YONGLE
TAPE (SHANGHAI) CO. LTD.,

By its attorneys,

By:   s/Steven C. Bennett
    Alan D. Rose, Jr. (BBO# 628871)
    Meredith A. Wilson (BBO# 652220)
    ROSE, CHINITZ & ROSE
    One Beacon Street, Fourth Floor
    Boston, Massachusetts 02108
    Tel:  (617) 536-0040
    Fax:  (617) 536-4400

    Steven C. Bennett, *Pro Hac Vice*
    Dana L. Salazar, *Pro Hac Vice*
    JONES DAY
    222 East 41st Street
    New York, New York 10017
    Tel:  (212) 326-3795
    Fax:  (212) 755-7306

    Counsel for Plaintiff
    PLYMOUTH YONGLE TAPE
    (SHANGHAI) CO., LTD.

NYI-4136704v7

Dated:  December 10, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document and all attachments filed through  the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via mail to those indicated as non-registered participants on December 10, 2008.

_____s/ Steven C. Bennett_____
Steven C. Bennett