UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| PLYMOUTH YONGLE TAPE (SHANGHAI) CO., LTD., | ) ) ) |
| Plaintiff and Defendant-in-Counterclaim, | ) ) |
| v. | ) ) |
| PLYMOUTH RUBBER COMPANY, LLC, and PLYMOUTH RUBBER CO., INC., | ) ) ) |
| Defendants. | ) ) |
| PLYMOUTH RUBBER COMPANY, LLC, | ) ) |
| Plaintiff-in-Counterclaim, | ) ) |
| v. | ) ) |
| DELPHI AUTOMOTIVE SYSTEMS, LLC, | ) ) |
| Defendant-in-Counterclaim. | ) ) |

Case No. 08-cv-11599-MLW

_____)

**DELPHI AUTOMOTIVE SYSTEMS, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COUNTERCLAIMS**

Harry L. Manion, III
Jennifer B. Furey
Matthew P. Horvitz
COOLEY MANION JONES LLP
21 Custom House Street
Boston, Massachusetts 02210

*ATTORNEYS FOR DELPHI
AUTOMOTIVE SYSTEMS, LLC*

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………...1

FACTS………………………………………………………………………………1

    I.      The Delphi Contract…………………………………………………………1

    II.    The Michigan State Lawsuit…………………………………………………3

    III.   The Massachusetts Federal Lawsuit…………………………………………4

ARGUMENT………………………………………………………………………..7

    I.      This Court Lacks Subject Matter Jurisdiction………………………………7

        A.    There Is No Diversity Between the Parties………………………….8

        B.    There Is No Supplemental Jurisdiction……………………………9

    II.    The Forum Selection Clause in the Delphi Contract Requires the Counterclaims Be Brought in Michigan……………………………..13

    III.   This Court Should Dismiss the Counterclaims Because They Are the Subject of a Previously Filed State Court Proceeding……………....16

CONCLUSION……………………………………………………………………..20

## INTRODUCTION

Counterclaim Defendant, Delphi Automotive Systems, LLC ("Delphi"), respectfully moves this Court to dismiss all counterclaims asserted against it by Defendant and Counterclaim Plaintiff, Plymouth Rubber Co., LLC ("Plymouth Rubber"). Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), this Court lacks subject matter jurisdiction over the dispute and Plymouth Rubber fails to state a claim upon which relief can be granted.

First, this Court lacks subject matter jurisdiction because Plymouth Rubber fails to satisfy the diversity requirement of 28 U.S.C. § 1332 and because no exception to otherwise confer jurisdiction exists. Second, the contract at issue between Delphi and Plymouth Rubber includes a mandatory forum selection clause, directing any dispute exclusively to the federal and state courts of Michigan. Third, Delphi already brought an action against Plymouth Rubber in Michigan state court premised on the exact dispute at issue here; therefore, this Court should abstain from adjudicating the matter, in deference to the parallel proceeding in Michigan state court. As demonstrated in greater detail below, this Court lacks jurisdiction to hear this case under a number of theories, and should dismiss all counterclaims against Delphi accordingly.

## FACTS

### I.      The Delphi Contract

Delphi is a world-wide supplier of automotive parts to brand-name manufacturers like General Motors, Ford, Chrysler, Toyota, Hyundai, Mercedes-Benz, Freightliner, and John Deere. (See certified true copy of Complaint in <u>Delphi Automotive Sys., LLC v. Plymouth Rubber Co., LLC</u>, C.A. No. 08-094507-CK (Mich. Cir. filed Sept. 15, 2008) (the "Michigan Lawsuit"), attached to the contemporaneously-filed Declaration of Jennifer B. Furey as <u>Exhibit 1</u> (the

"Michigan Complaint"), ¶¶ 2, 12, 14.[1])  Delphi is a limited liability company organized under

Delaware law and its sole member is a Delaware corporation.  (Def-in-Countercl.'s Corp.

Disclosure Stmt., filed herewith)  Plymouth Rubber is a global manufacturer and supplier of

vinyl tapes used in the manufacture of electric wire harness assemblies for automotive parts.[2]

(Mich. Compl. ¶¶ 1, 13.)  Plymouth Rubber is a limited liability company organized under

Delaware law.  (Am. Countercl. ¶ 1.[3])  Plymouth Rubber has not put forward any other

information regarding its citizenship and/or the citizenship of its member(s).

        Delphi and Plymouth Rubber entered into a contractual relationship on or about August

30, 2006.  (Mich. Compl. ¶ 20.)  On that date, Delphi issued a purchase order to Plymouth

Rubber that included Delphi's General Terms and Conditions.  Id.[4]  Plymouth Rubber accepted

the Delphi Contract through its regular course of performance.  (Mich. Compl. ¶ 20.)  The Delphi

Contract includes a forum selection clause.  (Delphi Contract, General Terms and Conditions ¶

26.1.)  This forum selection clause requires that Delphi and Plymouth Rubber bring all disputes

arising under the Delphi Contract in the federal or state courts of Michigan:

> … (a) this Contract is to be construed according to the law of the United States of
> America and the State of Michigan, excluding the provisions of the United
> Nations Convention on Contracts for International Sale of Goods, and any choice
> of law provisions that require application of any other law, and (b) each party
> hereby agrees that the forum and venue for any legal or equitable action or
> proceeding arising out of, or in connection with, this Contract will lie in the

---

[1] In ruling on the 12(b)(6) arguments in this motion to dismiss, this Court may consider the Complaint, documents annexed to it, and other materials fairly incorporated within the Complaint.  Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004).  This Court also may consider matters susceptible to judicial notice, including the contents of court documents from previous cases, as they are readily ascertainable from a reliable source. Boaten v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000); Airframe Sys., Inc. v. Raytheon Co., 520 F. Supp. 2d 258, 262 (D. Mass. 2007); see Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (court may take judicial notice "… of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint").

[2] Defendants, Plymouth Rubber Co., Inc. and Plymouth Rubber Co., LLC, are jointly referred to as "Plymouth Rubber."

[3] Refers to the Amended Counterclaim, Dkt. No. 15, in this action.

[4] Exhibits A and B to the Michigan Complaint are referred to jointly as the "Delphi Contract."

appropriate federal or state courts in the State of Michigan and specifically waives
any and all objections to such jurisdiction and venue.

(Delphi Contract, General Terms and Conditions ¶ 26.1.)

## II.     The Michigan State Lawsuit

In late 2007 and early January 2008, Plymouth Rubber began demanding price increases

under the Delphi Contract.  (Mich. Compl. ¶ 21.)  As part of its demand for price increases in

excess of the parties' agreed-upon contractual terms, Plymouth Rubber threatened to stop

shipping parts.  Id. at ¶ 21.  To avoid a disruption in supply, Delphi initially agreed to the price

increase.  Id.  Delphi, however, also informed Plymouth Rubber that, due to the price increase,

Delphi would seek to re-source parts.  Id. at ¶ 22.  So informed, Plymouth Rubber told Delphi

that it "had to do what it had to do," or words to that effect.  Id.

Subsequently, Plymouth Rubber demanded additional price increases, advanced payment

for parts, and a waiver of warranty obligations, and supported these demands with another threat

to stop shipping parts.  Id. at ¶¶ 30-32.  After negotiations to compromise failed, Plymouth

Rubber made good on its threats and stopped shipping parts to Delphi in blatant violation of the

Delphi Contract.  (Mich. Compl. ¶¶ 33-37.)  As a result, Delphi was faced with the prospect of

an almost immediate shutdown of its production line.  Id.  Delphi promptly responded with an

advanced payment to Plymouth Rubber under protest, with a full reservation of rights.  Id.

Thereafter, as relations continued to deteriorate and Plymouth Rubber continued to breach the

Delphi Contract, Delphi terminated its contract with Plymouth Rubber and began purchasing

supplies from Plymouth Yongle Tape (Shanghai) Co., Ltd. ("Yongle"), an alternative supplier.

Prior to entering into the business relationship with Yongle, Delphi confirmed that the agreement

between Yongle and Plymouth Rubber had been terminated.

On September 15, 2008, Delphi filed suit against Plymouth Rubber in Michigan state court (the "Michigan Lawsuit") for monies owed to Delphi.  (Mich. Compl. ¶¶ 3, 12-14, 16, 19, 38, 40.)  At no time did Plymouth Rubber object to jurisdiction in Michigan state court and, in fact, admitted that the Michigan court was "the proper venue for adjudication of this controversy."  (See certified true copy of Plymouth Rubber's Counterclaim in the Michigan Lawsuit, attached to the Declaration of Jennifer B. Furey as Exhibit 2 (the "Michigan Counterclaims"), at ¶ 4.)  Furthermore, Plymouth Rubber asserted counterclaims in the Michigan Lawsuit against Delphi for breach of contract, based on Delphi's re-sourcing of its product requirements to Yongle and alleged bad faith termination.  (Mich. Countercl. ¶¶ 14, 32-45.)  The Michigan Lawsuit is pending.

III.    **The Massachusetts Federal Lawsuit**

Meanwhile, Plymouth Rubber and Yongle were embroiled in a separate contractual dispute.  On September 18, 2008, Yongle filed a diversity action in the United States District Court for the District of Massachusetts against Plymouth Rubber (the "Federal Lawsuit").  (See Compl.; Am. Compl.)[5]  Yongle is a Chinese company involved with manufacturing and exporting PVC tapes and related products to the United States and other jurisdictions.  (Am. Compl. ¶ 9.)  Yongle claims that Plymouth Rubber breached a consignment agreement (the "Consignment Agreement") between them by failing to pay for, return, or otherwise account for five million dollars worth of goods.  (Am. Compl. ¶¶ 11, 18, 23, 24.)

Thereafter, Plymouth Rubber asserted counterclaims against Yongle under various contract and tort theories, all premised on the re-sourcing of Delphi's supply requirements to Yongle and Yongle's alleged resulting failure to comply with a set of contractual agreements it made with Plymouth Rubber, namely, the "Equity Investment and Transfer Agreement,"

---

[5] Refers to the Complaint and Amended Complaint filed in this action, docket numbers 1 and 11, respectively.

"Technology Transfer Agreement," and "Sales and Distribution Agreement" (collectively, the "Intellectual Property Agreements"). (Am. Countercl. ¶¶ 8, 9, 12, 15, 34.) Plymouth Rubber specifically asserts that it transferred intellectual property to Yongle through these agreements in exchange for distribution rights, and Yongle improperly terminated those agreements and misappropriated proprietary product information and customer contacts. (Am. Countercl. ¶¶ 21, 30.)

On November 25, 2008, with the Michigan Lawsuit pending, Plymouth Rubber filed counterclaims in the Federal Lawsuit against Delphi (the "Massachusetts Counterclaims") related to the same set of facts set forth in the Michigan Counterclaim, namely, Delphi's re-sourcing to Yongle. (Am. Countercl. ¶¶ 7, 20, 22-26, 30-32, 34, 35.) In the Massachusetts Counterclaims, Plymouth Rubber alleges Delphi tortiously interfered with advantageous and contractual relations (Count Five), induced the misappropriation of proprietary information and proprietary product lines (Count Nine), and engaged in civil conspiracy (Count Ten). (Am. Countercl. ¶¶ 20-28.) Plymouth Rubber also moved for injunctive relief against Delphi (Count Thirteen) seeking, in effect, specific performance of the Delphi Contract. Id. at ¶¶ 109-113.

Both the Massachusetts Counterclaims and Michigan Counterclaims arise out of Delphi's termination of Plymouth Rubber and decision to re-source its parts requirements to Yongle. Compare Mich. Countercl. ¶ 36 ("Delphi breached the agreement by re-sourcing its requirements beginning in June 2008") with Mass. Countercl. ¶ 22 (alleging that Delphi's communication with Yongle "led to an agreement between Yongle and Delphi whereby they wrongfully excluded Plymouth [Rubber] from knowledge of, and in participation in, sales of the Proprietary Product Line by Yongle to Delphi in violation of their respective obligations to Plymouth [Rubber]" and

¶ 57 ("Delphi entered into business relations with … Yongle … [and] caused Yongle to breach [its] agreement with Plymouth Rubber.").

Although sounding in tort, the Massachusetts Counterclaims are premised and rely upon the contractual relationship between Plymouth Rubber and Delphi, that is, the Delphi Contract.[6] For example, Plymouth Rubber claims Delphi communicated with and entered into an agreement with Yongle, allegedly in violation of Delphi's contractual obligations to Plymouth Rubber:

> As these discussions were ongoing, during May 2008, Yongle informed Plymouth [Rubber] that it had been contacted directly by Plymouth [Rubber]'s largest customer, Delphi, to discuss pricing and supply. On information and belief, Yongle's communication with Delphi continued from May 2008 forward in violation of the Equity Agreement and Sales and Distribution Agreement, as well as Delphi's contractual obligations with Plymouth [Rubber], and led to an agreement between Yongle and Delphi whereby they wrongfully excluded Plymouth [Rubber] from knowledge of, and participation in, sales of the Proprietary Product Line by Yongle to Delphi in violation of their respective obligations to Plymouth [Rubber].

(Am. Countercl. ¶ 22 (emphasis added); see id. at ¶ 25 ("Plymouth [Rubber] fielded concerns from Delphi about the pricing of the Proprietary Product Line in connection with the requirements contract that Delphi had with Plymouth [Rubber]").)  Indeed, Plymouth Rubber goes so far as to explicitly request that this Court compel Delphi to comply with the Delphi Contract:

> Public policy favors enforcement of the terms of bargained-for contracts and protection of proprietary and trade secret information and products. Consequently, Plymouth [Rubber] seeks injunctive relief enjoining Delphi, from purchasing products made by using the Proprietary Information to manufacture the Proprietary Product Line from anyone or except from Plymouth [Rubber].

Id. at ¶ 113.

---

[6]  In addition to these tort claims arising from the parties' contractual relationships, Plymouth Rubber also alleges civil conspiracy.  Although Plymouth Rubber did not specify which of the two types of civil conspiracy it alleges against Delphi, most likely it is the second type, known as "concerted action."  See Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 362-63 (D. Mass. 2002).  With this type of claim, "liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort."  Beck v. Prupis, 529 U.S. 494, 503 (2000).  As Plymouth Rubber's other claims against Delphi fail, so does its civil conspiracy claim.

These factual allegations Plymouth Rubber offers in support of the Massachusetts Counterclaims address Delphi and Plymouth Rubber's contractual relationship; the same contractual relationship contested in the Michigan Lawsuit. This Court should grant Delphi's motion to dismiss on the grounds detailed below.

## ARGUMENT

### I.      This Court Lacks Subject Matter Jurisdiction.

Federal courts are courts of limited jurisdiction. Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005). Accordingly, subject matter jurisdiction is never presumed. See id.; Rodrigues v. Genlyte Thomas Group LLC, 392 F. Supp. 2d 102, 106 (D. Mass. 2005). Whenever it appears by suggestion of the parties or otherwise that the court lacks subject matter jurisdiction the court shall dismiss the action. Francis v. Goodman, 81 F.3d 5, 8 (1st Cir. 1996) ("federal courts are not at liberty to overlook limitations on their subject matter jurisdiction"); see Fed. R. Civ. P. 12(h)(3). Furthermore, the burden is on the plaintiff, Plymouth Rubber, to demonstrate that this Court has subject matter jurisdiction. See Murphy v. U.S., 45 F.3d 520, 522 (1st Cir. 1995); Puerto Rico Tel. v. Telecom. Regulatory Bd., 189 F.3d 1, 7 (1st Cir.1999). Plymouth Rubber may not rest merely on "unsupported conclusions or interpretations of law." See Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir.1993); Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992) ("Subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unplead facts will not defeat a motion to dismiss.").

### A.      There Is No Diversity Between the Parties.

Plymouth Rubber has failed to meet its burden of establishing subject matter jurisdiction because it has failed to adequately plead the citizenship of its members or otherwise establish

diversity.  Plymouth Rubber solely relies upon diversity under 28 U.S.C. § 1332 to establish subject matter jurisdiction.  Federal jurisdiction in diversity cases "requires complete diversity between the plaintiffs and defendants in an action."  Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 17 (1st Cir. 2008) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806) and Halleran v. Hoffman, 966 F.2d 45, 47 (1st Cir.1992)).  Further, "[i]n the case of an amended complaint that joins new parties . . . diversity must exist at the time of the amendment."  15 *Moore's Federal Practice*, § 102.16[1] (Matthew Bender 3d ed.).  The First Circuit, in Pramco, LLC v. San Juan Bay Marina, Inc., made clear that the citizenship of a limited liability company, such as Plymouth Rubber, "is determined by the citizenship of all of its members."  435 F.3d 51, 54 (1st Cir. 2006).

Plymouth Rubber utterly fails to plead any facts sufficient to establish the citizenship of its members and also has not filed a corporate disclosure statement contrary to Local Rule 7.3. Accordingly, as in Pramco where the plaintiff failed to plead the citizenship of its members, diversity jurisdiction cannot be established.  See Pramco, 435 F.3d at 54.  Plymouth Rubber's claim of diversity also is contradicted by its own assertion that it is a limited liability company "organized under the laws of Delaware." (Am. Countercl. ¶ 3).  It is undisputed that Delphi is a limited liability company organized under Delaware law and that its sole member is a corporation organized under Delaware law.  (Def-in-Countercl.'s Corp. Disclosure Stmt., filed herewith).  Accordingly, based on Plymouth Rubber's own pleading, diversity does not exist between these two entities and the counterclaim must be dismissed.  See Barrows v. Robson, 993 F. Supp. 17, 18 (D. Mass. 1997); see Chase Manhattan Bank, N.A. v. Aldridge, 906 F. Supp. 870, 876 (S.D.N.Y. 1995) (dismissing counterclaim for lack of subject matter jurisdiction where

plaintiffs on the counterclaim and the defendants on the counterclaim were not completely diverse).

**B.       There Is No Supplemental Jurisdiction.**

In addition, Plymouth Rubber cannot rely upon supplemental jurisdiction to maintain the Massachusetts Counterclaims because these counterclaims are permissive under Fed. R. Civ. P. 13(b).  The supplemental jurisdiction statute provides that:

> the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties

28 U.S.C. § 1367(a).

"When considering supplemental jurisdiction, the nature of the counterclaim is crucial." Iglesias v. Mut. Life Ins. Co. of N.Y., 156 F.3d 237, 241 (1st Cir. 1998).  "Only compulsory counterclaims can rely upon supplemental jurisdiction; permissive counterclaims require their own jurisdictional basis."  Id.; see McCaffrey v. Rex Motor Transp., Inc., 672 F.2d 246, 248 (1st Cir. 1982); see Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers, Local Union No. 6 v. Thermo-Guard Corp., 880 F. Supp. 42, 45 (D. Mass. 1995) (Wolf, C.J.).

A compulsory counterclaim is one that "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claims; and does not require adding another party over whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a).  Any claim that is not compulsory must be treated as permissive.  Fed. R. Civ. P. 13(b).  Courts apply four tests to determine whether counterclaims are compulsory:

(1)      Are the issues of fact and law raised by the claim and counterclaim largely the same?

(2)     Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

(3)     Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

(4)     Is there any logical relation between the claim and the counterclaim?

See Iglesias, 156 F.3d at 241; Feed Mgmt. Sys., Inc. v. Brill, 518 F. Supp. 2d 1094, 1096 (D. Mass. 2007).

Application of these tests demonstrates that the Massachusetts Counterclaims do not arise out of the same transaction or occurrence that is the subject matter of Yongle's claims against Plymouth Rubber.  First, the issues of fact and law raised in the Massachusetts Counterclaims are distinct from Yongle's amended complaint.  Yongle's amended complaint, based on the Consignment Agreement, is a straightforward debt collection action.  Yongle claims Plymouth Rubber failed to account for and make payment on and/or return specific goods shipped by Yongle.  (Am. Compl. ¶¶ 1, 11, 23, 24, 26.)  The counterclaims against Delphi bear no relation to the goods delivered by Yongle or the amounts owed by Plymouth Rubber.  Rather, Plymouth Rubber claims Delphi interfered with a completely different set of contracts between Yongle and Plymouth Rubber.  Moreover, the counterclaims against Delphi center on Delphi's decision to re-source its parts requirements to Yongle after Yongle's termination of Plymouth Rubber, and not on the prior dispute between Yongle and Plymouth Rubber before the termination.  Thus, the issues of fact and law surrounding Yongle's claims under the Consignment Agreement are not the same as those surrounding Plymouth Rubber's interference claims against Delphi.  See Feed Mgmt. Sys., 518 F. Supp. 2d at 1096-97.  For the same reason, the evidence necessary to support or refute Yongle's contract claims against Plymouth Rubber under the Consignment Agreement

10

is entirely different from the evidence required to support or refute the tort claims between Plymouth Rubber and Delphi.

In addition, Plymouth Rubber would not be barred by res judicata from bringing a subsequent action against Delphi.  In Massachusetts, res judicata encompasses both the doctrine of claim preclusion and the doctrine of issue preclusion.  Bagley v. Moxley, 555 N.E.2d 229, 231 (Mass. 1990).  "Claim preclusion is the modern term for the doctrines traditionally known as 'merger' and 'bar,' and prohibits the maintenance of an action based on the same claim that was the subject of an earlier action between the same parties or their privies."  Id.  For the reasons set forth above, Yongle's debt collection claim does not implicate Plymouth Rubber's counterclaims, which are based on separate contractual agreements, distinct facts, and different parties.

"The doctrine of issue preclusion provides that when an issue has been actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim."  Jarosz v. Palmer, 766 N.E.2d 482, 487-88 (Mass. 2002) (quotation marks omitted).  The issues under the Consignment Agreement are separate from the issues of whether Delphi knowingly and wrongfully contracted with Yongle to re-source its product requirements. Plymouth Rubber would be not prohibited from bringing claims against either Yongle or Delphi in a separate action.  Plymouth Rubber asserts similar claims in Michigan state court and, as Yongle explains in its motion to dismiss, Plymouth Rubber actually may be obligated to arbitrate its counterclaims against Yongle in Hong Kong.  See Plf's Motion to Dismiss and Compel Arbitration, sec. III.C.3.

11

Finally, "the logical relationship test considers whether the claim and counterclaim arise out of the same aggregate of operative facts in the sense that the same aggregate of facts serves as the basis for both claims."  Feed Mgmt. Sys., 517 F. Supp. at 1098 (quotation marks omitted) (holding that "[o]n its face, a trademark claim would not arise out of the same aggregate of operative facts as a breach of contract claim").  This concept, determining whether a claim is compulsory, is expressed in the First Circuit as follows:

> A claim qualifies as compulsory only if: it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.

Iglesias, 156 F.3d at 242.  The facts related to Yongle's debt collection action are entirely distinct from the facts Plymouth Rubber avers in support of its claims that Delphi wrongfully contracted with Yongle.  These claims deal with different contracts, different time periods, and different parties.  See Int'l Ass'n of Heat & Frost Insulators, 880 F. Supp. at 46 (observing that defendant's counterclaims did not arise from the same contracts as those alleged in plaintiff's complaint).  Further, Plymouth Rubber's counterclaims were not dormant and then awakened by Yongle's complaint.  Yongle's decision to seek payment did not activate Plymouth Rubber's ability to counter-sue Yongle or even Delphi, which it had already done in Michigan state court.

In sum, Plymouth Rubber's counterclaims are permissive because they fail the compulsory counterclaim tests.  Because there is no other basis for federal jurisdiction than diversity, which is lacking between Plymouth Rubber and Delphi, the Massachusetts Counterclaims should be dismissed.

## II.   The Forum Selection Clause in the Delphi Contract Requires the Counterclaims Be Brought in Michigan.

The Massachusetts Counterclaims must be dismissed for the additional reason that they are barred by the forum selection clause in the subject contract.[7]  It is well-established that a forum selection clause is prima facie valid and should be enforced absent a strong showing that it is unreasonable under the circumstances.[8]  See Optasite, Inc., 2007 WL 2259106, at *2 (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)).  Thus, a court is required to enforce a forum selection clause "except where it could be shown to be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."  Id.; Reder Enters., Inc. v. Loomis, Fargo & Co., 490 F. Supp. 2d 111 (D. Mass. 2007).

Plymouth Rubber cannot satisfy the heavy burden of proof required to set aside the Delphi Contract's forum selection clause.  See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991).  The forum selection clause unequivocally states that "the forum for any legal or equitable action or proceeding arising out of, or in connection with, this Contract will lie in…the State of Michigan."  (Delphi Contract, Gen. Terms and Conditions ¶ 26.1 (emphasis added).)  This language is comparable to other forum selection clauses courts interpret as mandatory.  See Summit Packaging Sys., Inc. v. Kenyon & Kenyon, 273 F.3d 9, 13 (1st Cir. 2001) (citing Nascone v. Spudnuts, Inc., 735 F.2d 763, 765 (3d Cir.1984) (holding the language

---

[7] In the First Circuit, when a party seeks dismissal on the basis of a forum selection clause, the motion is treated as one to dismiss for failure to state a claim under Rule 12(b)(6).  Optasite, Inc. v. Robinson, Civ. A. No. 07-40023-FDS, 2007 WL 2259106, at *2 n.2 (D. Mass. Jul. 31, 2007) (Saylor, D.J.) (citing cases).

[8] The Commonwealth of Massachusetts embraces this same "modern view that forum selection clauses are to be enforced if it is fair and reasonable to do so."  Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 574-575, (1995).  The State of Michigan views the enforceability of forum selection clauses similarly.  See Lease Acceptance Corp. v. Abel, Nos. 278716, 278717, 278718, 278719, 2008 WL 4958799, at *3 (Mich. App. Nov. 20, 2008); Offerdahl v. Silverstein, 569 N.W.2d 834 (Mich. App. 1997).  Thus, where state and federal law are not in conflict, this Court need not consider the unresolved issue of whether the enforcement of a forum selection clause is a procedural or substantive matter for purposes of the Erie doctrine.  See Nelson v. CGU Ins. Co. of Canada, No. Civ. 02-193-BS, 2003 WL 1856439, at *2 n.2 (D. Me. Apr. 10, 2003) (citing cases).

"venue for any proceeding ... shall be Salt Lake County, State of Utah," constituted a mandatory

forum selection clause) and <u>Milk 'N' More, Inc. v. Beavert</u>, 963 F.2d 1342, 1345-46 (10th Cir.

1992) (holding the language "venue shall be proper under this agreement in Johnson County,

Kansas" constituted a mandatory forum selection clause)); <u>see</u> <u>Fornaro v. RMC/Resource Mgmt.

Co.</u>, 201 Fed. Appx. 783, 783-84 (1st Cir. 2006) (holding language "the jurisdiction of any

lawsuits related to or arising out of this contract *will be in* the courts of Carroll County, New

Hampshire" conferred exclusive jurisdiction (emphasis original)).

In <u>Summit Packaging</u>, the First Circuit examined a forum selection clause providing that

any dispute "<u>will</u> be submitted to arbitration ... or ... to the Courts of the State of New York...."

273 F.3d at 13 (emphasis added).  The court held that the language of this provision "simply

does not allow for an interpretation that permits filing suit outside of New York."  <u>Id.</u>  "When

parties agree that they 'will submit' their dispute to a specified forum, they do so to the exclusion

of all other forums."  <u>Summit Packaging</u>, 273 F.3d at13.  Like the forum selection clause in the

Delphi Contract, the First Circuit explains "the parties' choice of the word 'will'- a word

'commonly having the mandatory sense of 'shall' or 'must,'' Black's Law Dictionary 1102 (6th

ed.1991) - demonstrates [the parties'] exclusive commitment to the [named forum].  <u>Most

succinctly, the plain meaning of the phrase "will be submitted" is that the course of action is

required, not discretionary.</u>"  <u>Id.</u> at 12-13 (emphasis added).

Moreover, the forum selection clause encompasses Plymouth Rubber's tort claims.  This

Court has not "accept[ed] the invitation to reward attempts to evade enforcement of forum

selection agreements through artful pleading of tort claims in the context of a contract dispute."

<u>Optasite</u>, 2007 WL 2259106, at *2 (quoting <u>Lambert v. Kysar</u>, 983 F.2d 1110, 1121 (1st Cir.

1993)).  A forum selection clause applies to non-contract claims "where the basic source of any

duty owed by [Delphi] to [Plymouth Rubber] is derived from the contractual relationship structured by the underlying agreement." See Doe v. Seacamp Ass'n, Inc., 276 F. Supp. 2d 222, 228 (D. Mass. 2003). "Therefore, contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." Optasite, 2007 WL 2259106, at *2 (quotation marks omitted) (quoting Lambert, 983 F.2d at 1121-22 (holding forum selection clause applicable to contract claims and related tort claims)). In Reder Enterprises, the court observed that the applicability of a forum selection clause was unaffected by the fact that the plaintiff's complaint did not cite the parties' contractual agreement or letter of intent, which included the operative forum selection clause. 490 F. Supp. 2d at 116. Regardless, the forum selection clause, which governed "any claim related to or arising from" the contract at issue, "covered not only claims directly based on that contract but, as well, tort claims that grew out of the contractual relationship." Id. (emphasis added).

Plymouth Rubber's counterclaims of tortious interference with advantageous and contractual relations, inducement of misappropriation of proprietary information and proprietary product line, civil conspiracy, and injunctive relief are all based on the alleged violations of the Yongle and Delphi "contractual obligations with Plymouth." (Am. Countercl. ¶ 22.) Indeed, Plymouth Rubber explicitly seeks "enforcement of the terms of bargained-for contracts" and "injunctive relief enjoining Delphi, from purchasing products made by using the Proprietary Information to manufacture the Proprietary Product Line from anyone or except from Plymouth [Rubber]." (Am. Countercl. ¶ 113.) In essence, Plymouth Rubber seeks enforcement of the terms of its contract with Delphi, requiring Delphi to purchase 100% of its parts from Plymouth Rubber. The fact that Plymouth Rubber framed these claims in tort is of no consequence.

**III.    This Court Should Dismiss the Counterclaims Because They Are the Subject of a Previously Filed State Court Proceeding.**

This Court should dismiss the Massachusetts Counterclaims in deference to the previously filed Michigan Lawsuit under the abstention doctrine established in <u>Colorado River Water Conversation District v. United States</u>, 424 U.S. 800 (1976). The <u>Colorado River</u> abstention doctrine provides that where a parallel action is pending in a state court that may effectively or more efficiently resolve the dispute between the parties, the federal court should dismiss the federal action. 36 C.J.S. *Federal Courts* § 72 (West 2003). "[T]he general principle is to avoid duplicative litigation." <u>Colorado River</u>, 424 U.S. at 817. Thus, "considerations of wise judicial administration alone may sometimes warrant dismissal of a federal court proceeding." <u>Pastor-Ginorio v. R&G Mort. Corp.</u>, 371 F. Supp. 2d 89, 96 (D.P.R. 2005).

Application of the <u>Colorado River</u> doctrine requires satisfaction of a two-part test. <u>H&R Block Svcs., Inc. v. Rivera-Alicea</u>, 570 F. Supp. 2d 255, 266 (D.P.R. 2008). First, the Court must determine whether the actions in the state and federal proceedings are parallel. Proceedings are considered parallel if they involve the same parties and "substantially identical claims" raising "nearly identical allegations and issues." <u>Id.</u> "Suits need not be identical to be parallel, and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." <u>AAR Int'l, Inc. v. Nimelias Enters. S.A.</u>, 250 F.3d 510, 519 (7th Cir. 2001). Additional issues and/or parties in one of the cases does not foreclose similarity. 32A Am. Jur. 2d *Federal Courts* § 1112 (2008).

Second, the court must perform a balancing of the interests to determine whether there exist "exceptional circumstances" to justify abstention and deference to parallel state court proceedings. <u>H&R Block Svcs.</u>, 570 F. Supp. 2d at 266; <u>Munroe v. McGee</u>, 478 F. Supp. 2d

16

110, 118 (D. Mass. 2007).  To determine whether these exceptional circumstances exist, the

court considers eight factors:

> (1) whether either court has assumed jurisdiction over a *res*; (2) the inconvenience
> of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the
> order in which the forums obtained jurisdiction; (5) whether state or federal law
> controls; (6) the adequacy of the state forum to protect the parties' interests; (7)
> the vexatious or contrived nature of the federal claim; and (8) respect for the
> principles underlying removal jurisdiction.

Munroe, 478 F. Supp. 2d at 118; see U.S. v. Fairway Capital Corp., 483 F.3d 34, 40 (1st

Cir. 2007).  "[N]o one factor is necessarily determinative; a carefully considered

judgment taking into account both the obligation to exercise jurisdiction and the

combination of factors counseling against the exercise is required."  Villa Marina Yacht

Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 12 (1st Cir. 1990).

The Michigan Lawsuit is a pending parallel action to the Massachusetts Counterclaims.

While the first factor, jurisdiction over a *res*, is not applicable, the Delphi Contract's forum

selection clause points toward the convenience of the Michigan forum as contemplated by the

parties.  Further, the Michigan Lawsuit and Plymouth Rubber's counterclaims against Delphi

create a real possibility of piecemeal litigation.  Each involves the same parties, the same facts,

and arise from the same contractual agreement.  Both are grounded in Delphi's alleged

termination of the Delphi Contract and decision to purchase parts from Yongle.  As such,

independent adjudication of either risks leading to inconsistent rulings.  See H&R Block, 570 F.

Supp. 2d at 267; see Jackson Hewitt, Inc. v. J2 Fin. Servs., Inc., 901 F. Supp. 1061, 1065

(E.D.Va. 1995) (holding federal and state actions were parallel, even though not mirror images

of each other; although claims "were not pending in state court, they would likely be considered

compulsory counterclaims").

Further, while the timeframe is close, the Michigan Lawsuit was filed first.  See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983).  In that litigation, though there is no issue as to whether federal or state substantive law apply, Michigan state procedural law effectively requires that the Massachusetts Counterclaims must be brought as counterclaims to the Michigan Complaint.  Under Michigan Court Rules 2.203(A) and (E), Michigan is a compulsory joinder state.  Gross v. Landin, No. 246282, 2007 WL 1908124, at *2 (Mich. App. Aug. 26, 2004).  "Thus, when a party files a claim or counterclaim, he must join all of his claims that arise out of the transaction and occurrence."  Id.; see Salem Indus., Inc. v. Mooney Process Equip. Co., 437 N.W.2d 641, 642 (Mich. App. 1989).  Plymouth Rubber asserts counterclaims against Delphi in the Michigan Lawsuit for breach of contract based on re-sourcing and bad faith termination.  (See Mich. Countercl.)  Thus, all counterclaims arising out of the Delphi Contract must be brought in that action.  Plymouth Rubber should not be permitted to use this Court to circumvent the Michigan state court rules.

Of particular significance here, the vexatious or contrived nature of the federal claim, weighs heavily in favor of abstention.  "A federal claim may be vexatious or contrived if it is asserted in federal court after plaintiffs failed to make a similar claim in state court."  Valle-Arce v. Puerto Rico Ports Auth., Civ. No. 07-2071-FAB, 2008 WL 4917775, at *5 (D.P.R. Nov. 17, 2008).  As in Hoodco, Inc. v. United Capital Ins. Co., Plymouth Rubber could and should have sought the same relief in the Michigan Lawsuit by filing an appropriate counterclaim, but decided to "game" the system instead.  See 875 F. Supp. 541, 544 (S.D. Ill. 1994) (holding in favor of abstention where resolution of contract claims in state court would resolve claims in federal court).

The last factor "requires the district court to determine whether or not there is respect for the principles underlying removal jurisdiction." Id.  "This factor, resting in part upon the 'removal statute,' prevents the re-filing of a complaint in federal court." Villa Marina Yacht Sales, 915 F.2d at 14.  This principle "applies where a dual filing in state and federal forums has the same effect as if the plaintiff had actually removed the original suit." Id.  (quoting Am. Int'l Underwriters v. Cont'l Ins. Co., 843 F.2d 1253, 1260 (9th Cir.1988)).

A lack of diversity between the parties would prevent Plymouth Rubber from removing the Michigan Lawsuit to federal court.  Thus, allowing Plymouth Rubber to bring the Massachusetts Counterclaims would countenance a route around Plymouth Rubber's inability to remove the Michigan Lawsuit.  Even if Plymouth Rubber establishes diversity, this factor still weighs in favor of abstention.  The time for removal of the Michigan Lawsuit has passed. Allowing the Massachusetts Counterclaims would constitute a second chance at removal for Plymouth Rubber, contrary to the court's strict construction of the removal statute against removal.  See Univer. of R.I. v. A.W. Chesterton Co., 2 F.3d 1200, 1202 (1st Cir. 1993).

Accordingly, under the balancing of the interests analysis, the factors clearly weigh in favor of abstention.  First, the parties contracted for the selection of Michigan as the forum for their disputes.  Second, the first action was filed in Michigan.  Third, because the parties, facts, and law in dispute are identical, there is a serious risk of piecemeal litigation and inconsistent results should the parallel proceedings continue.  Fourth, respect for Michigan state procedural law is placed at issue in permitting a party who failed to properly bring all compulsory counterclaims in state court to revive that ability in another jurisdiction.  Fifth and Sixth, in simply reviewing the circumstances described above, asserting the Massachusetts Counterclaims demonstrates the vexatious nature of such a filing and the lack of respect for the principles

19

underlying removal jurisdiction.  There can be no doubt that this Court should abstain from adjudicating this matter and dismiss all counterclaims against Delphi.

## **CONCLUSION**

By reason of the above, the Court should grant Delphi's motion and dismiss Plymouth Rubber's counterclaims against Delphi.

Respectfully submitted,

DELPHI AUTOMOTIVE SYSTEMS, LLC
By its attorneys,


/s/ Jennifer B. Furey
Harry L. Manion, III (BBO#: 317440)
Jennifer B. Furey (BBO#: 634174)
Matthew P. Horvitz (BBO#: 664136)
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA 02210
(617) 737-3100
(617) 617-737-3113 (fax)
jfurey@cmjlaw.com

Dated:  January 12, 2008
#248776

20

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing memorandum of law was filed though the Court's CM/ECF system on January 12, 2009, and will be sent electronically to the registered participants as identified on the notice of electronic filing, and paper copies will be sent to those indicated as non-registered participants.

/s/ Jennifer B. Furey